IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ANTHONY LOMBARDO, | ) | CASE NO. 1:13-cv-02281 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

Plaintiff Anthony Lombardo ("Plaintiff" or "Lombardo") seeks judicial review of the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  Doc. 1.  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2.

For the reasons set forth below, the undersigned recommends that the Commissioner's decision be AFFIRMED.

## I. Procedural History

Lombardo filed applications for DIB and SSI on or about March 14, 2011.[1] Tr. 55, 63, 71, 81, 173-176, 177-183. He alleged a disability onset date of September 1, 2010 (Tr. 55, 63, 71, 81, 173-176, 177-183, 208) and he alleged disability due to diabetes, neuropathy in feet, numbness in hands, high blood pressure, and depression (Tr. 55, 63, 71, 95, 102, 106, 108, 112, 212). After initial denial by the state agency (Tr. 95-97) and denial upon reconsideration (Tr. 102-114), Lombardo requested a hearing (Tr. 115). An administrative hearing was held before Administrative Law Judge Penny Loucas ("ALJ") on June 20, 2012. Tr. 23-54.

In her July 13, 2012, decision, the ALJ determined that Lombardo had not been under a disability from September 1, 2010, through the date of the decision. Tr. 8-22. Lombardo requested review of the ALJ's decision by the Appeals Council. Tr. 7. On August 28, 2013, the Appeals Council denied Lombardo's request for review, making the ALJ's decision the final decision of the Commissioner.[2] Tr. 1-6.

## II. Evidence

**A.    Personal, educational, and vocational evidence**

Lombardo was born in 1959. Tr. 174, 177, 208, 237. He completed 12th grade. Tr. 213. He lives alone in a mobile home. Tr. 40. His past work included worked as an auto mechanic,

---

[1] The record reflects different filing dates for Lombardo's applications. *See* Tr. 173-176, 177-183 (reflecting a March 15, 2011, filing date); Tr. 55, 63, 71, 81 (reflecting a March 14, 2011, filing date). The ALJ concluded that the applications were filed on March 14, 2011. Tr. 11.

[2] As part of its review, the Appeals Council considered Lombardo's claims that the ALJ had "intimidated" him and "interrogated" him as if he were a criminal and assessed whether the ALJ had abused her discretion under 20 C.F.R. § 404.970. Tr. 1. The Appeals Council concluded that, "After reviewing the entire record, including the hearing recording, we have determined that there was no abuse of discretion and that no other basis exists to grant review in this case." Tr. 1. Lombardo does not raise a similar claim in this Court.

2

auto parts manager, and service manager.[3] Tr. 28, 31-32, 44-45, 46-51, 213, 225-232. In 2010, Lombardo started working part-time as a dishwasher at Perkins Restaurant and was continuing to work in that position at the time of the hearing. Tr. 32-33.

**B.    Medical evidence[4]**

    **1.    Treatment history**

During 2010, 2011, and 2012, Lombardo received his primary medical treatment through Northeast Ohio Neighborhood Health Services, Inc.[5] ("NEON"). Tr. 42, 262-284, 286, 289-332, 339-355. At NEON, Lombardo received treatment for his medical conditions, including his diabetes.[6] Tr. 262.

In August 2010, he was seen by NEON providers for a diabetes medication refill, health maintenance and bilateral feet numbness. Tr. 262. He had been off his diabetes medication for a year. Tr. 262. He reported having concerns over tingling in his feet. Tr. 262. He reported a changed lifestyle. Tr. 262. For example, he had stopped consuming pop and had lost weight. Tr. 262. The August 2010 treatment notes reflect that Lombardo's chronic problems included diabetes, type II; obesity, unspecified; and hypertension, benign. Tr. 262. Lombardo's doctor recommended that he start testing and keeping track of his sugar levels twice each day and exercise more. Tr. 263.

Lombardo was seen for follow up on September 7, 2010. Tr. 264. His sugar levels remained high. Tr. 264. His glucose level was 334 during the visit. Tr. 264. Lombardo reported

---

[3] In 2009, Lombardo was terminated from his position at an auto parts store due to a theft for which he ultimately was charged criminally and was placed on probation. Tr. 28-31.

[4] Lombardo does not challenge the ALJ's findings with respect to his alleged mental impairments. Thus, the medical evidence summarized herein relates primarily to his physical impairments.

[5] He was also was seen at the MetroHealth emergency room in March 2012 for a skin infection. Tr. 42-44, 356-365.

[6] Lombardo had first been diagnosed with diabetes around 2001. Tr. 266.

3

that he was still having numbness and tingling in his feet. Tr. 264. Lombardo's doctor recommended that he start taking Metformin, keep a record of his sugar levels, exercise more, and follow up in a few weeks. Tr. 265.

On October 27, 2010, Lombardo reported that he was having a hard time losing weight. Tr. 266. He had weighed 320 pounds but over the years had lost weight and was down to 260 pounds. Tr. 266. He was doing better with his glucose monitoring but reported that he was still having tingling in both feet. Tr. 266. He was referred for nutrition counseling and to podiatry. Tr. 268.

In December 2010, Lombardo was upset because he had gained weight. Tr. 269. His blood glucose levels ranged from 124-140. Tr. 269. Part of Lombardo's plan included scheduling podiatry and nutrition appointments. Tr. 270.

On March 17, 2011, Lombardo was seen by a podiatrist at NEON. Tr. 272. He complained of painful feet and reported that his pain worsened the longer he was on his feet. Tr. 272. He reported that he had tried Lyrica for 3 days but stopped taking it because it made him too drowsy. Tr. 272. He was trying to keep his blood sugar under control and reported that his blood sugar that morning had been 117. Tr. 272. He indicated that he was not sleeping through the night and was becoming depressed. Tr. 272. The examining physician noted that she was "unable to assess neurovascular testing due to the patient[']s feet being so sensitive to the slightest touch." Tr. 273. However, she noted that Lombardo's lower extremity strength was 5/5. Tr. 273. His foot vibratory sensation was abnormal bilaterally and his sensorium was impaired. Tr. 273. Lombardo was advised to try taking Lyrica again. Tr. 274. It was recommended that he take one rather than two tablets at bedtime to see if it would decrease the drowsiness he was experiencing. Tr. 274.

On April 21, 2011, Lombardo saw the podiatrist again with continuing reports of pain. Tr. 276.  He also stated that he was waking up constantly at night because of numbness and tingling sensations in his legs and feet.  Tr. 276.  He reported that he was taking one Lyrica pill at night.  Tr. 276.  His blood sugar level that morning had been 110.  Tr. 276.  He stated that the bottom of his feet were extremely sensitive to touch and asked whether he might have fibromyalgia.  Tr. 276.  On examination, Lombardo's gait was normal.  Tr. 277.  His strength was 5/5.  Tr. 278.  His dorsalis pedis pulses and posterior tibial pulses were normal.  Tr. 278. His monofilament examination was abnormal.  Tr. 278.  There was no edema, ulceration or cyanosis present.  Tr. 278.  Lombardo had mild calf tenderness bilaterally.  Tr. 278.  Lombardo was instructed to begin taking two Lyrica pills at night and to follow up in one month. Tr.  278. He was also provided a referral to Behavioral Medicine.  Tr. 278.

On May 19, 2011, Lombardo was seen for an office visit.  Tr. 311.  He reported weight gain and burning of his extremities. Tr. 311.  With respect to his feet/leg pain, he reported that he wanted to try an alternative to Lyrica because he stated that his neuropathy had not improved. Tr. 311.  However, his current medication was continued.  Tr. 313.  A walking exercise program was recommended.  Tr. 313.  Referrals to psychiatry and podiatry were made.  Tr. 313, 321.

On June 23, 2011, Lombardo saw his podiatrist.  Tr. 314-317.  He continued to complain of sensitivity in his feet.  Tr. 314.  He reported that his blood sugar that morning was 107 and was usually well-controlled.  Tr. 314.  He complained of cramping in both calve muscles and stated that he had shooting pain that goes up from his feet.  Tr. 314.  He was concerned that he had circulatory problems.  Tr. 314.  An evaluation showed abnormal foot vibratory sensations

and impaired sensorium. Tr. 316. A referral was made for vascular studies because of diminished pedal pulses.[7] Tr. 316, 323.

On August 18, 2011, Lombardo was seen for right-sided facial weakness and a referral was made to neurology. Tr. 318, 326.

On October 28, 2011, Lombardo was seen for a follow up regarding his diabetes. Tr. 341. Lombardo was compliant with his medication. Tr. 341. He reported his home glucose readings were a minimum of 70 and maximum of 186. Tr. 341. His current medication was continued and Glucose and hemoglobin A1C labs were ordered. Tr. 342.

He was seen again in February 2012 for follow up regarding his diabetes and for a medication refill. Tr. 353. He was compliant with his medication. Tr. 353. His medications were continued and a referral for nutrition counseling was made. Tr. 354.

In April 2012, Lombardo was seen for follow up regarding an infection in his left fifth toe. Tr. 343, 347. He had been treated with antibiotics at the hospital. Tr. 343, 356-365. He reported that his toe looked a lot better than it had. Tr. 343. He rated his pain as a 5/10 on the pain scale but reported that he was on his feet a lot at work which could cause his pain level to increase close to a 10. Tr. 343. He inquired about shoes to help support his fifth toe so it was not so painful. Tr. 343. Drainage of his abscess resulted in some improvement of his pain. Tr. 345. Antibiotics were provided. Tr. 345.

2.   **Opinion evidence**

Two state agency physicians reviewed Lombardo's records and offered their opinions with respect to Lombardo's physical RFC.[8]

---

[7] It is unclear from the record or the parties' briefing whether the vascular studies were obtained or, if obtained, what the studies showed.

[8] There are no treating or examining source opinions with respect to Lombardo's physical impairments.

6

Initially, on June 29, 2011, state agency reviewing physician William Bolz, M.D., completed a physical RFC assessment. Tr. 67-69.  Dr. Bolz opined that Lombardo had the following exertional limitations: he could occasionally lift/carry 20 pounds; frequently lift/carry 10 pounds; stand/walk a total of 6 hours in an 8-hour workday; sit a total of 6 hours in an 8-hour workday; his ability to push/pull was limited in his lower extremities; and he was unable to use foot controls because of foot sensitivity. Tr. 67-68.  Dr. Bolz also opined that Lombardo had the following postural limitations: he could occasionally climb ramps/stairs, balance, crouch, and crawl; he could never climb ladders/ropes/scaffolds; and he was unlimited in his ability to stoop and kneel.  Tr. 68.  Dr. Bolz indicated that the stated postural limitations were based on an abnormal monofilament examination.  Tr. 68.  Dr. Bolz also opined that Lombardo had no manipulative, visual, communicative, or environmental limitations.  Tr. 68.

On October 20, 2011, state agency reviewing physician Victoria Eskinazi, M.D., also completed a physical RFC assessment.  Tr. 86-88.  Dr. Eskinazi opined that Lombardo had the following exertional limitations: he could occasionally lift/carry 20 pounds; frequently lift/carry 10 pounds; stand/walk a total of 6 hours in an 8-hour workday; sit a total of 6 hours in an 8-hour workday; and his ability to push/pull was limited in his lower extremities.  Tr. 86-87.  She based her opinion regarding Lombardo's exertional limitations on the fact that Lombardo had a BMI of 43 and diabetes with peripheral neuropathy.  Tr. 87.  She also made note of March and April 2011 examination findings which included an abnormal monofilament examination bilaterally in the lower extremities; no edema/ulcers; the presence of pedal pulses; abnormal vibratory sensations; a normal gait; 5/5 strength; and mild calf tenderness.  Tr. 87, 273-274, 277-278.  While Dr. Bolz opined that Lombardo could not use foot controls due to foot sensitivity (Tr. 68),

Dr. Eskinazi noted Lombardo's foot sensitivity but also noted that he drives and opined that Lombardo could occasionally use foot controls (Tr. 87).

With respect to postural limitations, Dr. Eskinazi opined that Lombardo could occasionally climb ramps/stairs, balance, crouch and crawl; he could never climb ladders/ropes/scaffolds; and he was unlimited in his ability to stoop and kneel.  Tr. 87.  Dr. Eskinazi indicated that the stated postural limitations were based on an abnormal monofilament examination and she referenced her prior explanation regarding Lombardo's exertional limitations.  Tr. 87.  Dr. Eskinazi opined that Lombardo had environmental limitations, including avoidance of concentrated exposure to extreme heat and cold, wetness, and vibration and avoidance of hazards (machinery, heights, etc.).  Tr. 87-88.  Dr. Eskinazi explained that the stated environmental limitations were based on Lombardo's loss of sensory protective reflexes and she also added that Lombardo would be required to avoid unprotected heights and regular work on wet/uneven surfaces.  Tr. 88.  Dr. Eskinazi also opined that Lombardo had no manipulative, visual, or communicative limitations.  Tr. 87.

**C.      Testimonial evidence**

    **1.      Plaintiff's testimony**

Lombardo testified and was represented at the hearing.  Tr. 27-44, 45, 46, 49.  He indicated that he applied for disability because his problems with his diabetes had become too overbearing but he stated that there was no specific reason that he picked September 1, 2010, as his alleged disability onset date.  Tr. 27-28.

He provided background regarding his past work.  Tr. 28-32, 45, 46, 49.  He indicated that he had been working part-time as a dishwasher at Perkins Restaurant since 2010.  Tr. 33.  He stated that he would be unable to work full-time because of the pain in his legs; he is unable to

8

stand; he has severe pain in his neck and back; and he is very depressed, suicidal at times.[9] Tr. 34.

With respect to his leg pain, Lombardo indicated that he has severe cramping in his legs and numbness in his feet and toes. Tr. 35. He described his pain as "somebody's standing, you know, applying crushing motion to my legs and constricting them." Tr. 35. He reported having severe pain all the time, with standing and walking making his pain worse. Tr. 35. He has problems walking because he cannot feel his legs; he is off balance; he is crouched over; and he gets shooting pains up through his body. Tr. 37-38. He estimated being able to walk about 5, maybe 10 minutes before needing to take a break. Tr. 38. He has a difficult time walking on uneven surfaces and has to look down when walking because he is afraid he might fall. Tr. 38. He also has a hard time climbing stairs. Tr. 38. If he has to climb stairs, he turns his body sideways, takes them very slowly, and holds onto a rail. Tr. 38.

While working his part-time job, Lombardo stands uninterrupted for about 5 or 6 hours. Tr. 35-36. He works 2 days each week from 8:30 a.m. to 3:00 p.m.. Tr. 35-36. To manage his shift at work, there is a counter in his work area that he leans on to try to take some of the weight off of his feet. Tr. 39. Also, he will elevate his feet one at a time to try to relieve the pressure. Tr. 39. He has been told, however, that he should not be taking breaks at work and, he was sent home once for taking a break. Tr. 39. He continues to work the part-time job because he has to support himself. Tr. 39. His part-time job is his only source of income and he does not have family members to help him. Tr. 39.

Lombardo lives alone in a mobile home. Tr. 40. His mobile home is flat on the ground so he does not need to climb steps at home. Tr. 40. He does about an hour of light housework each week in 5 or 10 increments. Tr. 40. When he comes home from work, he is unable to walk

---

[9] Lombardo indicated that he was not receiving any treatment for depression. Tr. 35.

and is crouched over.  Tr. 36.  It takes him a long time to get out of the car.  Tr. 36.  He has to sit so he has enough circulation to make it to the door.  Tr. 36.  Once home, he lies down for the night.  Tr. 36.  He might grab something real quick for dinner.  Tr. 36.  To help alleviate the pain in his legs, he may try to elevate his legs but it usually does not help.  Tr. 36.  He feels the effects of working the following day.  Tr. 37.  He has no feeling in his feet or legs.  Tr. 37.   Depending on how he feels, if he has an errand to run, he may do that.  Tr. 37, 40-41.  Otherwise, during the day, he usually lies around.  Tr. 37.  Lombardo drives but he has some difficulty driving because his feet go numb.  Tr. 41.  His foot problems have not yet caused a problem while driving.  Tr. 41.  However, he generally limits his driving to areas around his neighborhood and he usually does not drive longer than 10 minutes from his house.  Tr.  41.

Lombardo takes Neurontin for the pain but he stated that it does not help with the pain.  Tr. 37.  Although he has not gotten relief from the Neurontin, his doctors have advised him to keep taking it and indicated that there really is nothing more that they can give him for the pain.  Tr. 37.  Although not prescribed, on occasion, Lombardo uses a cane because, when the pain and numbness get bad, he loses his balance.  Tr. 41-42.

    **2.**    **Vocational expert's testimony**

Vocational Expert Thomas Nimberger ("VE") testified at the hearing.  Tr. 44-53.  The VE described Lombardo's past work, which included work as a service manager at a muffler repair shop, auto mechanic, and auto parts manager.  Tr. 44-50.  All three jobs were skilled jobs, with the auto mechanic position being medium level work and the manager positions being light level work.  Tr. 44-45.  The VE indicated that there were no skills that were directly transferable.  Tr. 51-53.

The ALJ asked the VE to assume a hypothetical individual who could perform light work; could occasionally use foot pedals; occasionally climb ramps and stairs; occasionally balance, crouch and crawl; never climb ladders, ropes, or scaffolds; has an unlimited ability to stoop and kneel; must avoid concentrated exposure to extreme cold, extreme heat, wetness, and vibration; and had no mental limitations.  Tr. 51.  The VE indicated that the described individual would be unable to perform Lombardo's past work as an auto mechanic because of weight limits but the described individual would be able to perform Lombardo's past work as an auto parts manager and service manager.  Tr. 51.

### III. Standard for Disability

Under the Act, 42 U.S.C § 423(a), eligibility for benefit payments depends on the existence of a disability.  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

42 U.S.C. § 423(d)(2).

In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations.  The five steps can be summarized as follows:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If the claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

11

3.       If the claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

4.       If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if the claimant's impairment prevents him from doing past relevant work.  If the claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5.       If the claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920;[10] *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42, 96 L. Ed. 2d 119, 107 S. Ct. 2287 (1987).  Under this sequential analysis, the claimant has the burden of proof at Steps One through Four.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  The burden shifts to the Commissioner at Step Five to establish whether the claimant has the Residual Functional Capacity ("RFC") and vocational factors to perform work available in the national economy.  *Id.*

### IV. The ALJ's Decision

In her July 13, 2012, the ALJ made the following findings:[11]

1.       Lombardo met the insured status requirements through December 30, 2014.  Tr. 13.

---

[10] The DIB and SSI regulations cited herein are generally identical.  Accordingly, for convenience, further citations to the DIB and SSI regulations regarding disability determinations will be made to the DIB regulations found at 20 C.F.R. § 404.1501 et seq.  The analogous SSI regulations are found at 20 C.F.R. § 416.901 et seq., corresponding to the last two digits of the DIB cite (i.e., 20 C.F.R. § 404.1520 corresponds with 20 C.F.R. § 416.920).

[11] The ALJ's findings are summarized.

2. Lombardo had not engaged in substantial gainful activity since September 1, 2010, the alleged onset date.[12]  Tr. 13.

3. Lombardo had severe impairments of non-insulin dependent diabetes mellitus (Type II), diabetic neuropathy, and obesity.  Tr. 13-14.  Lombardo's hypertension and depression were non-severe impairments.  Tr. 14.

4. Lombardo did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  Tr. 14-15.

5. Lombardo had the RFC to perform less than a full range of light work with the following limitations.  He was limited to occasional use of foot pedals.  He could occasionally climb ramps or stairs.  He could occasionally balance, crouch, and crawl.  He could not climb ladders, ropes, or scaffolds.  He was unlimited in his ability to stoop and kneel.  He had to avoid concentrated exposure to extreme cold, extreme heat, wetness, and vibration.  He had no mental limitations.  Tr. 15-17.

6. Lombardo was capable of performing past relevant work as a manager (auto parts) and service manager (muffler repair shop) because the occupations did not require the performance of work-related activities precluded by Lombardo's RFC.  Tr. 17-18.

Based on the foregoing, the ALJ determined that Lombardo had not been under a disability since September 1, 2010, through the date of the decision.  Tr. 18.

### V. Parties' Arguments

Lombardo's sole argument is that the ALJ unreasonably found that his subjective complaints of pain and functional limitations were only partially credible and unreasonably concluded that he had the RFC to perform prolonged walking and standing as required by light work.  Doc. 15, pp. 8-12.

In response, the Commissioner argues that the ALJ properly assessed Lombardo's credibility with respect to his complaints of pain.  Doc. 16, pp. 7-8.

---

[12] The ALJ noted that Lombardo had worked as a part-time dishwasher in 2010 and 2011.  Tr. 13.  However, the ALJ concluded that the earnings record for that position did not meet the criteria for substantial gainful activity.  Tr. 13.

## VI. Law & Analysis

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.  42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)).  Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).  Accordingly, a court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

A.    **Credibility assessment**

Social Security Ruling 96–7p and 20 C.F.R. § 404.1529 describe a two-part process for assessing the credibility of an individual's subjective statements about his or her symptoms. First, the ALJ must determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged; then the

14

ALJ must evaluate the intensity and persistence associated with those symptoms to determine how those symptoms limit a claimant's ability to work.

When evaluating the intensity and persistence of a claimant's symptoms, consideration is given to objective medical evidence and other evidence, including: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms.  20 C.F.R. § 404.1529(c); Soc. Sec. Rul. 96–7p, 1996 WL 374186, at 3 (July 2, 1996).

"Tolerance of pain is a highly individual matter and a determination of disability based on pain by necessity depends largely on the credibility of the claimant." *Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987) (quoting *Houston v. Secretary of Health and Human Services,* 736 F.2d 365, 367 (6th Cir.1984)).  Thus, since the ALJ had the opportunity to observe Lombardo, her conclusions should not be easily dismissed. *Id.*; *see also Calvin v. Comm'r of Soc. Sec.*, 437 Fed. Appx. 370, 371 (6th Cir. 2011) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir.1997)) ("An ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility"). "Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Calvin*, 437 F. Appx. at  371.

**B.     The ALJ properly assessed Lombardo's credibility**

When assessing the credibility of Lombardo's allegations regarding the intensity, persistence and limiting effects of his pain, in accordance with the applicable rules and regulations, the ALJ considered the case record and conducted a thorough credibility analysis. The ALJ concluded that, while Lombardo's medically determinable impairments could be expected to cause his alleged pain and other symptoms, the limitations associated with those symptoms were not as severe as Lombardo alleged. Tr. 15-17.

The Court may not "try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility." *Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir. 1987).  Consequently, "[i]t is not this Court's function to re-assess the credibility finding." *Littleton v. Comm'r of Soc. Sec.*, 2013 U.S. Dist. LEXIS 164311, *29-30 (N.D. Ohio Sept. 16, 2013), *report and recommendation adopted*, *Littleton v. Comm'r of Soc. Sec.*, 2013 U.S. Dist. LEXIS 164307 (N.D Ohio Nov. 19, 2013).  Rather, in reviewing an ALJ's credibility determination, the Court is "to accord the ALJ's determinations of credibility great weight and deference" and is therefore "limited to evaluating whether or not the ALJ's explanations for partially discrediting . . . [the claimant] are reasonable and supported by substantial evidence in the record." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).   Here, the ALJ's decision is sufficiently clear to allow this Court to determine whether the ALJ conducted a proper credibility assessment and whether that determination is supported by substantial evidence.  Soc. Sec. Rul. 96–7p, 1996 WL 374186, at * 4.

In determining that Lombardo's statements regarding the intensity, persistence and limiting effect of his pain were not entirely credible, the ALJ properly considered his treatment

history.  *See* 20 C.F.R. § 404.1529(c).  For example, the ALJ considered Lombardo's treatment history for diabetes noting that, while Lombardo had been treated for non-insulin dependent diabetes mellitus, his blood sugar levels had been well-controlled.  Tr. 17.   Lombardo does not challenge the ALJ's finding that his blood sugar levels were controlled.  Doc. 15, p. 10.  Rather, he points to neurological manifestations resulting from his diabetes that he argues are well documented in the record.  Doc. 15, p. 10.  However, the ALJ did not ignore the evidence regarding his neurological manifestations.  She considered his neuropathic symptoms but found that his neuropathic symptoms had not affected his ability to stand, walk, and sit for 6 hours in an 8-hour day.  Tr. 16.  She did, however, find that his neuropathic loss of sensation in his feet precluded him from concentrated exposure to extreme heat, extreme cold, wetness, and vibration.  Tr. 16-17, 88 (referencing state agency reviewing physician Dr. Eskinazi's opinion).

Further, the ALJ properly considered Lombardo's daily activities.  *See* 20 C.F.R. § 404.1529(c)(3)(i).  For example, the ALJ found that Lombardo's description of his daily activities, i.e., a "sedentary" lifestyle and doing nothing more than "light housekeeping," did not comport with the fact that he can stand without interruption for 5-6 hours maximum.  Tr. 16.  Additionally, the ALJ took into account Lombardo's part-time work as a dishwasher, noting that his ability to perform that work suggested that his symptoms were not as disabling as he alleged.  Tr. 16.  She also considered that, although Lombardo indicated that his feet sometimes go numb, he was able to drive a car.  Tr. 16.  While Lombardo disagrees with the ALJ's assessment of his credibility, he has not argued nor demonstrated that it was improper for the ALJ to consider his daily activities when assessing the credibility of his statements regarding the intensity, persistence and limiting effect of his pain.

17

The ALJ also considered the fact that Lombardo testified to using a cane at times.  Tr. 16.  However, the ALJ found that Lombardo's claimed need to use a cane was not supported by the medical record.  Tr. 16.  Lombardo seems to suggest that, because he testified that a cane had not been prescribed and that testimony was consistent with the medical record, the ALJ improperly found his statements less than credible.  Doc. 15, p. 10.  However, under the regulations, when assessing credibility, an ALJ may properly consider treatment other than medication, measures used to relieve pain or other symptoms, and other factors concerning functional limitations and restrictions due to pain or other symptoms.  See 20 C.F.R. § 404.1529(c)(3)(v)-(vii).  Thus, it was not improper for the ALJ to take into consideration the fact that, while Lombardo pointed to his use of a cane to demonstrate the severity of his pain, his physicians had not found it necessary to prescribe a cane.

Additionally, the ALJ properly considered and relied upon the medical opinion evidence when reaching her decision.  See 20 C.F.R. 404.1529(c)(1) (indicating that consideration of medical opinion evidence is appropriate when assessing how an individual's symptoms affect him).  Here, although there was no treating source medical opinion, in reaching her decision that, notwithstanding Lombardo's symptoms, he had the RFC to perform less than a full range of light work with some postural and environmental limitations, the ALJ relied upon and gave considerable weight to the opinions of the two state agency reviewing physicians that included functional limitations consistent with the ALJ's RFC.  Tr. 17, 67-69, 86-88.  For example, the state agency reviewing physicians opined that Lombardo had the ability to stand and/or walk about 6 hours in an 8-hour workday.  Tr. 68, 87.

Having reviewed the ALJ's decision, and considering that an ALJ's credibility assessment is to be accorded great weight and deference, the undersigned finds that the ALJ's

credibility analysis regarding the severity of Lombardo's symptoms is sufficiently explained and supported by substantial evidence. Moreover, Lombardo has failed to demonstrate that the ALJ's finding that Lombardo had the RFC to perform less than a full range of light work with some postural and environmental limitations is not supported by substantial evidence. Thus, even if Lombardo were able to demonstrate that "there exists in the record substantial evidence to support a different conclusion," reversal would not be warranted. *See e.g., Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 525 (6th Cir. 2003) (affirming the ALJ's credibility determination) (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)). Accordingly, Lombardo's request to reverse and remand the Commissioner's decision on the basis of the ALJ's credibility assessment is without merit.

## VII. Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends that the Commissioner's decision be AFFIRMED.

Dated: September 25, 2014

Kathleen B. Burke
United States Magistrate Judge

## **OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).